NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0379n.06

No. 13-5961

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 20, 2014
DEBORAH S. HUNT, Clerk

LOUIS P. BARBAGLIA, and MARILYN          )
BARBAGLIA, Individually and as Husband   )
and Wife,                                )
                                         )
    Plaintiffs-Appellants,               )
                                         )  ON APPEAL FROM THE UNITED
v.                                       )  STATES DISTRICT COURT FOR THE
                                         )  WESTERN DISTRICT OF TENNESSEE
NONCONNAH HOLDINGS, LLC,                 )
                                         )
    Defendant-Appellee.                  )

BEFORE: DAUGHTREY, CLAY, and STRANCH, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. The district court, exercising its diversity jurisdiction, granted summary judgment to the defendant, Nonconnah Holdings, LLC (Nonconnah), on a claim alleging that Nonconnah negligently failed to clear ice from a parking area in a Memphis office park. According to the plaintiffs, Louis and Marilyn Barbaglia, that failure contributed to Louis slipping on a patch of black ice and severely injuring his right hand, resulting in medical expenses, lost wages, pain and suffering, disfigurement, loss of enjoyment of life, and loss of consortium.

Before this court, the plaintiffs contend that the district court improperly invaded the province of the jury by reserving to itself the determination of the reasonableness of the defendant's actions under the circumstances presented in this litigation. However, courts are not precluded in all instances from making determinations of reasonableness, especially when

uncontested facts clearly show that the defendant did not breach a duty of care owed to the plaintiffs. Because no such duty of care was breached in this instance, we affirm the judgment entered in favor of Nonconnah.

Louis Barbaglia was employed as an over-the-road truck driver by IKON Office Solutions, Inc., a supplier of copiers, printers, and other business machines. To complete his regular route, Barbaglia would leave the St. Louis area near midnight on Mondays, Tuesdays, Wednesdays, and Thursdays and drive to a Memphis, Tennessee, IKON facility located in the Nonconnah Corporate Center, a complex comprised of 27 buildings situated on 290 acres. The building in which IKON's Memphis office was located was a large U-shaped structure with sidewalks and entrances on the outside of the U and a parking lot measuring 158,160 square feet inside that U.

According to uncontroverted weather data contained in the appellate record, Memphis received a total of .22 inches (slightly less than one-quarter inch) of precipitation on Sunday, February 14, 2010. That precipitation started as light rain, but as the air temperature dropped from 42.8° F at 4:28 p.m. to 32.0° F at 8:05 p.m., the rain changed to light snow. Consequently, the following morning, Monday, February 15, 2010, the four-person maintenance crew at Nonconnah Corporate Center arrived at work at 6:00 a.m., two hours before the usual starting time, and spent a combined 16 man-hours "spread[ing] salt on entryways" throughout the office park. The maintenance crew did not salt the complex's parking lots, however, because "it's not common practice, within the City of Memphis, to do that [to a] parking lot."

On February 15, 2010, Barbaglia arrived at the Memphis facility before the maintenance crew began spreading any salt around the office park. Even though the IKON parking lot was

not salted, Barbaglia testified in his deposition that he did not recall "seeing any snow or ice," or recall the lot "being slippery" or containing "any water." In fact, he termed his delivery run on Monday, February 15, 2010, as "just normal."

After Barbaglia returned to the St. Louis area later on February 15, the weather service recorded additional "light" snowfall in the Memphis area between approximately 12:30 p.m. and 2:00 p.m. That precipitation was so light, however, that it failed to measure even one one-hundredth (0.01) of an inch. No additional precipitation of any kind was recorded in Memphis on February 16, 2010, but the ambient air temperatures early that morning remained below 32° F, just as they had all day on February 15.

Despite those wintry conditions, Barbaglia testified that his five-hour drive from the St. Louis area to Memphis on February 16, 2010, was "more than safe." Indeed, he claimed that he "wouldn't have got there that quickly if it wasn't." Moreover, he did not remember seeing any standing water or snow when he pulled into the brightly lit parking area behind the IKON offices, nor did he remember his truck slipping or sliding as he came to a stop. As he grabbed his laptop computer from the seat of the truck's cab and stepped onto the pavement, however, he slipped on black ice and, not wanting to drop the laptop, ended up "punch[ing] the asphalt trying to stop [himself] from hitting the ground."

The parties do not dispute that the injuries Louis Barbaglia sustained as a result of the fall in the parking lot were serious and costly. In fact, the record before us on appeal indicates that, after Louis obtained worker's compensation benefits because of the accident, IKON's insurer placed a lien on subsequent monetary recoveries by Barbaglia in the following amounts: medical – $95,658.22; indemnity – $34,116.50. Furthermore, the parties do not dispute that Nonconnah

owed Louis Barbaglia a duty of reasonable care to maintain its property in a safe condition. Indeed, the disagreement between Nonconnah and the Barbaglias centers solely upon the question of whether a jury should determine in the first instance whether the precautions undertaken by Nonconnah were, in fact, reasonable under the circumstances.

In granting summary judgment to Nonconnah, the district court recognized that, although "questions of reasonableness are typically reserved for the jury," courts sometimes may "decide the question of reasonableness on summary judgment." In *Clifford v. Crye-Leike Commercial, Inc.*, 213 S.W.3d 849 (Tenn. Ct. App. 2006), for example, the Tennessee Court of Appeals affirmed a grant of summary judgment to a defendant who failed "to keep [a] ramp clear of snow or to post warnings of the presence of a wheelchair ramp concealed by the fallen snow." Id. at 851. The evidence adduced in that case indicated that Emmett Clifford shattered his ankle when he slipped off the side of a ramp that was obscured by heavy snowfall. Id. at 852. Even though landowners "are expected to take reasonable steps to remove natural accumulations of snow or ice within a reasonable time," id. at 853 (citing *Grizzell v. Foxx*, 348 S.W.2d 815, 817 (Tenn. Ct. App. 1960)), the state appellate court recognized that "[d]angerous conditions created by the natural accumulation of snow or ice are considered to be among the 'normal hazards of life.'" Id. (quoting Grizzell, 348 S.W.2d at 817). Consequently, "landowners are not required to keep their premises free of natural accumulations of snow and ice at all times." *Id.* (citations omitted). In light of the fact that Clifford was injured while a snowstorm continued to rage, the Tennessee intermediate appellate court concluded that "[t]he difficulty and expense of [the] remedial measures [that the Cliffords felt the landowner should have undertaken] outweighed the possibility that a customer, like Mr. Clifford, who decided to brave the winter weather might

injure himself by slipping on the side of a wheelchair ramp concealed under the fallen snow." *Id.* at 854.

Likewise, it clearly was not unreasonable in this matter for Nonconnah Holdings to fail to remove the patch of ice from IKON's parking area in the early morning hours of February 16, 2010. As noted by the district court, the parties "agree that there had been very little recent precipitation" prior to the accident, "that Barbaglia did not see or experience any accumulation when driving onto the parking lot," "that no party was aware of any dangerous condition before the accident," "that Nonconnah was responsible for a large area," and that the accident occurred three hours before the maintenance crew normally reported for work. Moreover, no complaints about the condition or safety of the parking lot had been made to the appropriate individuals, and Barbaglia himself had made his delivery to IKON's Memphis office the day prior to his accident without incident, even though more winter precipitation had fallen the day before that earlier delivery than the mere trace of light snow that was recorded in the early afternoon hours of February 15, 2010. In short, this case presents one of those rare instances in which a determination of the reasonableness of the defendant's failure to remedy a winter-weather condition that is "among the normal hazards of life" can be made confidently without submission of the matter to a jury.

The state law applicable to the resolution of this negligence action has been articulated ably and applied correctly by the district court. The district court also appropriately concluded that Louis Barbaglia's injury, in light of the conditions of which Nonconnah was aware, or reasonably should have been aware, was not foreseeable. However, we find no legitimate support in the record for the district court's claim that, "given the large size of the property, the number of maintenance workers and their typical schedule, it would be prohibitively expensive

for Nonconnah to monitor the condition of all parking lots 24 hours a day." Indeed, such an economic analysis is completely unnecessary in this matter, especially given the uncontroverted evidence that the winter precipitation had not accumulated to any significant degree prior to Barbaglia's accident, and that Nonconnah had not observed nor been alerted that any dangerous condition had manifested itself on its property. Despite the inclusion in the district court order of that one unnecessary comment, given the remainder of the district court's cogent analysis, we conclude that issuance of a full written opinion by this court would be duplicative and would serve no useful precedential purpose. We therefore AFFIRM the judgment of the district court for the reasons set forth in the district judge's order of summary judgment filed on June 17, 2013, with the single exception we have noted.